## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN REVIELLO, | : | Civil No. 3:17-CV-01707 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BANKERS LIFE AND CASUALTY | : | |
| COMPANY and | : | |
| CNO FINANCIAL GROUP, INC., | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

In this removal action, Plaintiff, John Reviello ("Reviello"), pursues state-law claims against Defendants, Bankers Life and Casualty Company ("Bankers Life") and CNO Financial Group, Inc. ("CNO Financial"). Bankers Life meanwhile pursues counterclaims against Reviello. Pending before the court is Defendants' motion for summary judgment on Reviello's claims. (Doc. 24.) Those claims center around a debt that Bankers Life believes Reviello owes but has not paid since he was terminated from his role as an independent contractor insurance agent. In turn, because Reviello did not pay the debt, Bankers Life reported the information to third parties, including credit-reporting agencies. And, at least according to the allegations in the complaint, that information has harmed Reviello, resulting in damages. For the following reasons, the court will grant Defendants' motion.

## PROCEDURAL HISTORY

### A. Reviello's Complaint

On or about June 14, 2017, Reviello filed a complaint against Defendants in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. 1-3, pp. 1–28.)[1] In order to provide context, the court provides the following summary of Reviello's allegations.

Beginning in 2012, Reviello worked as an insurance agent for Defendants. (*Id.* at 5, 19.) Defendants would pay Reviello commissions on sales of their underwritten insurance policies. (*Id.*) In 2013, however, Defendants terminated Reviello from his position. (*Id.*) After the termination, Reviello began planning to start his own insurance company. (*Id.*)

As part of his new business, Reviello offered insurance products underwritten by third-party insurance companies. (*Id.*) After he entered into sales agreements with those third-party companies, however, he was either denied the ability to sell the products or denied the benefit of receiving advanced commissions on the products sold. (*Id.* at 6, 20.) According to Reviello, that occurred because Defendants made a "derogatory remark" on his VectorOne "Debit-Check" credit report. (*Id.*)

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

In brief, the "Debit-Check" report contains information regarding an insurance agent's credit worthiness, business dealings, and reputation. (*Id.*) Insurance companies and underwriters who consider selling products through insurance agents "will rely on information contained in a Debit-Check report when deciding whether to deal with an agent and on what terms." (*Id.*) "If there are negative or derogatory remarks in a Debit-Check report, it acts as a blacklist for the insurance agent." (*Id.*) With respect to the alleged "derogatory mark," Reviello avers that Defendants represented that he defaulted on his business obligations and owed money. (*Id.*)

Reviello disputed the representation that he owed Defendants money. (*Id.*) In furtherance of his dispute, Reviello sent correspondence to VectorOne on July 5, 2016, stating that the information on his report was inaccurate. (*Id.*)[2] He further requested that the information be removed. (*Id.*) VectorOne subsequently sent correspondence to Defendants asking them to investigate. (*Id.* at 6, 20–21.) On July 28, 2016, Defendants replied and requested that the information remain on Reviello's report. (*Id.* at 7, 21.) According to Defendants, the information had been verified and was accurate. (*Id.*) In turn, VectorOne allowed the information to remain on Reviello's report. (*Id.*)

---

[2] Throughout his pleading, Reviello cites to exhibits that he purportedly attached. But none appear on the docket.

Towards the end of 2016, Reviello sent Defendants and VectorOne additional correspondence regarding the disputed information that remained on his report. (*Id.*)  In response to Reviello's correspondence, VectorOne asked Defendants to provide an explanation for the information no later than November 8, 2016.  (*Id.*)  Defendants, however, did not respond.  (*Id.*)  In Reviello's view, the non-responsiveness signaled knowledge of falsity of the information that Defendants initially reported and reaffirmed.  (*See id.* at 7–8, 21.)  Furthermore, Reviello perceived that Defendants maliciously reported and then verified the information "to damage [his] reputation, business relationships, and ability to successfully sell insurance products."  (*Id.* at 8, 22.)

Based on these allegations, Reviello asserts state-law claims for defamation *per se* (Count I), defamation (Count II), commercial disparagement (Count III), interference with contractual relationships (Count IV), and interference with "perspective (sic) economic gain" (Count V).  (*Id.* at 8–12, 22–26.)  Reviello also avers that Defendants violated the Illinois Uniform Deceptive Trade Practices Act ("UDTPA") (Count VI).  (*Id.* at 12–13, 26–27.)  For relief, Reviello pleaded a request for "judgment in excess of $50,000," to include recovery of actual damages, compensatory damages, punitive damages, and attorneys' fees and costs. (*Id.* at 13, 27.)

**B.  Removal to Federal Court**

On July 10, 2017, Defendants answered the complaint.  And, on or about August 18, 2017, Reviello filed a reply.  (Doc. 1-3, pp. 29–50, 53–57.)  On the same date that he filed his reply, Reviello answered Defendants' requests for admissions, admitting that he actually seeks damages in excess of $75,000, exclusive of interest and costs.  (Doc. 1-4, pp. 10–11.)  Thus, it was confirmed that the amount-in-controversy requirement for purposes of diversity jurisdiction was satisfied.

Defendants received Reviello's admissions on or about August 22, 2017. (Doc. 1, ¶ 4.)  In turn, on September 20, 2017, because complete diversity of citizenship also existed between Reviello and Defendants, Doc. 1, ¶¶ 11–15, Defendants removed the case to this court.  (Doc. 1.)  *See* 28 U.S.C. § 1332 (codifying diversity jurisdiction); *see also* 28 U.S.C. § 1446(b)(3) ("[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of . . . other paper from which it may first be ascertained that the case is one which is or has become removable."); *Essenson v. Coale*, 484 F. Supp. 987 (M.D. Fla. 1994) (denying motion to remand where the initial pleading did not allege damages in excess of the jurisdictional amount-in-controversy requirement, but the defendant timely removed upon receipt of an offer of judgment that satisfied the threshold amount).

### C. Defendants' Amended Answer With Additional Defenses And Bankers Life's Counterclaims

With the court's permission, Doc. 19, Defendants filed an amended answer to the complaint. (Doc. 17-1.) In the same pleading, Bankers Life asserts counterclaims against Reviello for breach of contract, breach of fiduciary duty, misappropriation of trade secrets under the Federal Defend Trade Secrets Act, and misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act. (*Id.* at 40–43.) Furthermore, in relevant part, Defendants assert the following defenses: statute of limitations; justification; privilege; qualified privilege; truth of statements; and common interest. (*See id.* at 30–32.) On March 12, 2019, the pleadings closed when Reviello answered Bankers Life's counterclaims. (Doc. 20.)

### D. Defendants' Motion For Summary Judgment

On September 26, 2019, after discovery closed, *see* Doc. 23, Defendants filed the pending motion for summary judgment on Reviello's claims. (Doc. 24.) Contemporaneously with their motion, Defendants filed a statement of material facts, supporting brief, and evidentiary exhibits. (*See* Docs. 25–27.) Reviello then sought multiple extensions of time to respond to Defendants' motion, which the court granted. (*See* Docs. 28–36.) Pursuant to the final order granting Reviello's request for an extension time, his "response" and "all associated documents" were due on or before November 14, 2019. (Doc. 36.) Reviello did not comply.

On November 15, 2019, Reviello filed an untimely brief in opposition – a brief that also does not comply with the formatting requirements of Local Rule 5.1. (Doc. 37.)  Given the untimeliness of the brief, the court could, but will not, deem the motion uncontested.  M.D. Pa. L.R. 7.6.  In addition to filing a late brief, Reviello did not respond to Defendants' statement of material facts, file his own counterstatement of material facts, or supply the court with any of his own evidence.  *See* M.D. Pa. L.R. 7.6, 56.1; *see also* Fed. R. Civ. P. 56.  The court will take this into account in the discussion that follows.

Finally, on November 26, 2019, Defendants filed their reply brief.  (Doc. 38.)  Since then, no further filings or submissions have been made or attempted.  The motion is ripe for review.

### FACTUAL BACKGROUND FOR PURPOSES OF THE PENDING MOTION[3]

CNO Financial is an indirect parent company of Bankers Life.  (Doc. 25, ¶ 11; Doc. 25-3.)  Bankers Life provides individuals with insurance and financial products.  (Doc. 25, ¶ 1; *see* Doc. 20, ¶ 7.)  In furtherance of its business, Bankers Life utilizes insurance agents to provide its products to clients.  (*Id.*)  In that role,

---

[3] Given that Reviello did not respond to Defendants' statement of facts or direct the court to controverted evidence, the court will generally treat Defendants' statement of material facts as admitted and undisputed, at least where supported by record evidence.  *See* Fed. R. Civ. P. 56(e)(2) (permitting district courts to treat as undisputed asserted facts that the other party fails to properly address); M.D. Pa. L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.")  However, the court will not ignore apparent disputes of material fact that are supported by record evidence.

the insurance agents serve as independent contractors on behalf of Bankers Life.

(*Id.*)

On September 19, 2012, Reviello began working for Bankers Life as an independent contractor insurance agent.  (*Id.* ¶ 2; *see* Doc. 20, ¶ 6.)  Reviello worked in Bankers Life's Wilkes-Barre, Pennsylvania branch office.  (Doc. 25, ¶ 2; *see* Doc. 37, p. 2.)  The relationship between Bankers Life and Reviello was governed by an Agent Contract.  (Doc. 25, ¶ 3; *see* Doc. 20, ¶ 14.)  In part, Paragraph 22 of the Agent Contract provided:

> (a) Either party may terminate this contract at will, without cause, by giving notice to the other party of the intention to terminate this Contract.
>
>     . . . [and]
>
> (f) Upon termination of this Contract for any reason, all indebtedness of Agent to the Company shall immediately become due and payable.

(Doc. 25, ¶ 4.)

On or about February 26, 2013, Bankers Life terminated Reviello's Agent Contract.  (Doc. 25, ¶ 5; *see* Doc. 20, ¶ 19.)  Bankers Life further believed that upon his termination, Reviello owed $1,063.03 in overpaid/unearned commissions.  (*See* Doc. 25-1, p. 77.)  Thereafter, on August 20, 2013, because the debt remained unpaid, Bankers Life posted the debt to VectorOne/Debit-Check, an agent screening tool used in the insurance industry to check for commission-related debt.  (Doc. 27, p. 3; *see also* Doc. 1-3, pp. 6, 20.)

On November 14, 2013, Caine & Weiner, a debt-collection company, sent correspondence to Reviello regarding the debt.  (Doc. 25-1, p. 77.)  In the letter, the company notified Reviello that the debt was listed for collection.  (*Id.*)  Reviello did not pay the debt.  Within a year – no later than July 24, 2014 – Reviello also learned that Bankers Life had reported the outstanding debt to credit reporting agencies.  (Doc. 25, ¶ 7; *see* Doc. 37, pp. 3, 5, 7.)  Indeed, in July 2014, after he was denied credit by either Home Depot or Lowe's, Reviello saw that the debt appeared on his credit report.  (Doc. 25-1, pp. 25–26, 28–29; *see* Doc. 37, pp. 3, 5, 7.)

Banker's Life posted the debt to VectorOne/Debit-Check because the company reasonably believed that the insurance industry shared a common interest in the subject matter and was entitled to know.  (Doc. 27, p. 3; *see* Doc. 37, pp. 3, 6.)  Of course, Reviello disputes the debt and believes Bankers Life owes him $4,692.22 in unpaid commissions.  (Doc. 25, ¶ 9.)  On or about December 5, 2014, Reviello succeeded in having the debt removed from two credit reports.  (Doc. 25-1, pp. 80–81.)  Furthermore, on November 10, 2016, due in part to Bankers Life's non-responsiveness in a reinvestigation request, the debt was removed from the VectorOne/Debit-Check tool.  (Doc. 25-1, pp. 83–84.)

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citation omitted); *see also* Fed. R. Civ. P. 56(c)(4) (establishing requirements for affidavits or declarations filed in support of or opposition to a motion for summary judgment). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)). "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Moreover, the court is not required to go on a fishing expedition in search of relevant evidence. The court must only consider the evidence that the parties cite to in their summary-judgment filings. Fed. R. Civ. P. 56(c)(3).

Summary judgment will generally be appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION[4]

### A. CNO Financial Is Entitled To Summary Judgment On All Counts.

Reviello's theory to tie CNO Financial into this case rests on his claim that "one or more employees . . . communicated" with him "regarding the debt." (Doc. 37, p. 8.) Reviello, however, does not cite to record evidence to support his theory.

---

[4] A federal court applies the substantive law of its forum State in diversity actions, including statutes of limitations. *See Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) (citing *Guar. Tr. Co. v. York*, 326 U.S. 99 (1945); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In this case, Reviello does not contend that the law of a State other than Pennsylvania governs his claims, aside from the single claim under the Illinois UDTPA. Nor does he contend that any potentially-relevant law of another State conflicts with Pennsylvania law on salient points. In fact, ignoring the UDTPA claim, in his brief in opposition to the pending motion for summary judgment, Reviello only cites to cases by Pennsylvania courts that relate to Pennsylvania law. In this posture, the court will apply substantive Pennsylvania law when ruling on Defendants' motion as it concerns each of Reviello's claims, except for the one claim under the Illinois UDPTA.

Moreover, Defendants present uncontroverted evidence that CNO Financial is merely an indirect parent company of Bankers Life. (Doc. 25-3.) Absent evidence supporting Reviello's theory, no reasonable juror could find that CNO Financial bears liability for the claims in the complaint. Thus, the court agrees with CNO Financial, Doc. 26, pp. 11–12, that it is entitled to summary judgment on all Counts.

## B. Reviello Has Abandoned His Claim Under The Illinois UDTPA.

Here, in their brief in support, Defendants contend that, assuming the UDTPA has any applicability to the case, the UDTPA "does not provide a cause of action for damages – its only remedy is injunctive relief." (Doc. 26, p. 10 (citing *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 917 (N.D. Ill. 2013).) In opposition to the motion, Reviello does not address Defendants' argument. (Doc. 37.)

"[A] non-movant's failure to offer any response to an opposing party's summary judgment arguments constitutes an abandonment of claims left undefended." *Diodato v. Wells Fargo Ins. Servs., USA, Inc.*, 44 F. Supp. 3d 541, 556 (M.D. Pa. 2014) (collecting cases). Consequently, the court deems the Illinois UDTPA claim abandoned and will award summary judgment to Bankers Life on Count VI. *See*, *e.g.*, *Mills v. City of Harrisburg*, 589 F. Supp. 2d 544, 558 n. 15 (M.D. Pa. 2008) (deeming claims to be "abandoned" and granting summary

13

judgment to defendants when counsel failed to respond to arguments raised against those claims) (citations omitted).

### C. The Defamation Claims Are Untimely.

Claims for defamation are subject to a one-year statute of limitations in Pennsylvania. 42 Pa. C.S.A. § 5523(1); *see Pro Golf Mfg., Inc. v. Tribune Rev. Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002) (holding that § 5523(1) applies to claims for commercial disparagement). The statute ordinarily begins to run on the date that defamatory material is first published. *Dominiak v. Nat'l Enquirer*, 266 A.2d 626, 629–30 (Pa. 1970). Under the discovery rule, however, the statute of limitations is tolled and does not begin to run "until the plaintiff has discovered his injury, or, in the exercise of reasonable diligence, should have discovered his injury." *Pocono Int'l Raceway v. Pocono Produce*, 468 A.2d 468, 471 (Pa. 1983).

Here, Bankers Life contends that Reviello's defamation claims are barred by the statute of limitations. (Doc. 26, p. 6.) In opposition, Reviello's sole contention appears to be that, even though he knew about the alleged defamatory statements and was injured three years before he filed this action, the statute of limitations was tolled via the discovery rule while he attempted to gather additional facts for his case. (*See* Doc. 37, p. 5.) Indeed, Reviello argues that, until "this proceeding was well underway," he did not learn the "basis for the [allegedly defamatory]

statements" or the "exact nature of [his] claims." (*Id.*)  Having reviewed the

parties' arguments, the court agrees with Bankers Life.

Initially, if Reviello is arguing that he needed more information to prepare

his complaint, that is completely irrelevant to the discovery-rule inquiry.  The sole

inquiry is "whether [he] knew of the injury and the cause thereof."  *Gallucci v.*

*Phillips & Jacobs, Inc.*, 614 A.2d 284, 288 (Pa. Super. Ct. 1992).  The details

could have been fleshed out in other ways while the timeliness of his claims was

preserved.  *See, e.g.*, Pa. R. Civ. P. Nos. 1007(1) (commencement of action via

praecipe for a writ of summons), 4003.8 (pre-complaint discovery), 1033(a)

(amended complaint); *see also* Fed. R. Civ. P. 15(a)(2) (amended complaint).

Instead, Reviello did not take any step to preserve the timeliness of his claims,

allowing the statute of limitations to lapse before he initiated this case.

Reviello does not dispute Bankers Life's assertion that he was aware of the

purported defamatory statements as early as July 24, 2014.  (Doc. 37, p. 5.)

According to the undisputed evidence, on the same date, Reviello knew he was

denied credit because of the same allegedly defamatory statements.  Thus, as of

July 24, 2014, Reviello was aware he had been injured and the cause thereof.  Yet,

he did not initiate this case until June 14, 2017 – nearly three years later, and well beyond the one-year statute of limitations.[5]

In sum, a reasonable juror court only conclude that the defamation claims are untimely and barred by the relevant statute of limitations, 42 Pa. C.S.A. § 5523(1). Thus, the court will award summary judgment to Bankers Life on Counts I, II, and III.

### D. The Court Will Also Enter Summary Judgment On Reviello's Two Remaining Claims.

#### 1. Intentional Interference With Contractual Relations

As previously noted, Reviello asserts a claim against Defendants for interference with contractual relationships. (Doc. 1-3, pp. 10–11, 24–25.) Reviello alleges that from "mid-2016 through to the end of 2016, [he] was able to contract with a number of third-party insurance companies to provide insurance products through his new agency." (*Id.* at 10, 24.) But then, according to Reviello, Defendants, "[w]ith the intent to harm" him, "interfere[d] with those contractual relationships." (*Id.*) Based on the allegations in the complaint, the court construes

---

[5] The court is unaware of evidence demonstrating or permitting a reasonable inference that any person beyond Reviello and Home Depot/Lowe's viewed the information that Bankers Life reported to VectorOne and the credit reporting agencies. Thus, even if the single-publication rule does not apply in this case, *see, e.g.*, *Pendergrass v. ChoicePoint, Inc.*, No. 08-188, 2008 WL 5188782 (E.D. Pa. Dec. 10, 2008), no reasonable juror could conclude that the statute of limitations was ever re-triggered by a subsequent viewing after 2014. In any event, Reviello does not dispute the application of the single-publication rule, and does not assert that the statute of limitations was re-triggered on some date within the limitation period.

the claim as one for intentional interference with <u>existing</u> contractual relationships.

Thus, a necessary element is the existence of a contractual relationship between

Reviello and a third party – in this case a third-party insurance company. *Phillips*

*v. Selig*, 959 A.2d 420, 429 (Pa. Super. Ct. 2008) (citing Restatement (Second) of

Torts § 766 (1979)).

In moving for summary judgment on this claim, Defendants pertinently

contend that "there were no 'existing' contractual relationships with which

Bankers Life could have interfered." (Doc. 26, p. 9.) The court interprets

Reviello's very confusing response as a concession of this point. (*See* Doc. 37, pp.

7–8.) Reviello has not directed the court to evidence proving the existence of a

contractual relationship between him and any third-party insurance company.

Thus, based on the evidence of record, because a reasonable juror could not find

for Reviello on this claim, the court will enter summary judgment for Bankers Life

on Count IV.

### 2.  "Interference With Perspective (sic) Economic Gain"

Under Pennsylvania law, the stated claim is not recognized. *United*

*Safeguard Distribs. Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932,

953 (C.D. Cal. 2015) (applying Pennsylvania law). Rather, courts construe the

claim – more appropriately spelled out as interference with <u>prospective</u> economic

gain – as one for intentional interference with contractual relations. *Id.* (citing

*Blackwell v. Eskin*, 916 A.2d 1123, 1126 (Pa. Super. Ct. 2007)).   And the court will

do so here.   More precisely, based on the allegations in the complaint, Doc. 1-3,

pp. 11–12, 25–26, the court construes the claim as one for intentional interference

with <u>prospective</u> contractual relations.

Akin to the previous claim, a necessary element is the existence of a

prospective contractual relationship between Reviello and a third-party.  *Blackwell*,

916 A.2d at 1127–28 (citing *Reading Radio, Inc. v. Fink*, 833 A.2d 199, 211 (Pa.

Super. Ct. 2003), *app. denied*, 847 A.2d 1287 (Pa. 2004) (internal citation

omitted)).   A "prospective contractual relationship" is "something less than a

contractual right, something more than a mere hope." *Thompson Coal Co. v. Pike

Coal Co.*, 412 A.2d 466, 471 (Pa. 1979).   Under Pennsylvania law, the plaintiff

must present adequate proof of "an objectively reasonable probability that a

contract will come into existence."  *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d

173, 184 (3d Cir. 1997).   "This reasonable probability may result from an

unenforceable express agreement, an offer, or the parties' current dealings, but not

merely from prior dealings or an existing business relationship between the

parties." *Binns v. Flaster Greenberg, P.C.*, 480 F. Supp. 2d 773, 780 (E.D. Pa.

2007) (citation omitted) (internal quotation marks omitted).

As before, with the claim concerning <u>existing</u> contractual relationships,

Defendants pertinently argue that this claim fails because Reviello has not

18

demonstrated the existence of any relevant prospective contractual relationships. (*See* Doc. 26, pp. 9–10; Doc. 38, p. 7.)  And in opposition to the pending motion, Reviello fails to come forward with any evidence to support the proposition that a <u>prospective</u> contractual relationship existed.  The court, moreover, does not understand the claim to rely on any interference with Reviello's ability to obtain credit through companies like Home Depot or Lowe's.[6]  Rather, the allegations take aim at alleged prospective relationships between Reviello and third-party insurance companies.  (Doc. 1-3, pp. 11–12, 25–26.)  Reviello has not pointed to evidence from which a reasonable juror could conclude or even draw an inference that any such prospective relationships existed.  Consequently, the court will enter summary judgment for Bankers Life on Count V.

## CONCLUSION

For the foregoing reasons, the court will grant the Defendants' motion for summary judgment.  (Doc. 24.)  The court, however, will defer entering judgment on the Plaintiff's claims until Bankers Life's counterclaims are also resolved.  An

---

[6] If this is his theory, it is undisputed that he knew Home Depot or Lowe's denied him credit in 2014 because of the reported debt, but he filed this action nearly three years later.  Thus, a claim premised on such theory would be barred by the two-year statute of limitations.  *See CGB Occupational Therapy, Inc. v. RHA Health Servs., Inc.*, 357 F.3d 375, 383 (3d Cir. 2004) (citing *Bednar v. Marino*, 646 A.2d 573, 577 (Pa. Super. Ct. 1994)) ("Pennsylvania courts apply the two-year statute of limitations of 42 Pa. C.S.A. § 5524(3) to tortious interference with contractual relations claims.").  The court is not aware of any later instance in which a company might have denied him credit based on the alleged defamatory information.

appropriate order will follow.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 7, 2020